IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD JARELL CONAWAY, #454-281   *

Plaintiff   *

v   *   Civil Action No. RDB-17-1191

WARDEN TINA STUMP and[1]   *
DR. DOLPH DRUCKMAN,
  *
Defendants
  ***

## MEMORANDUM OPINION

### Procedural History

On May 1, 2017, Plaintiff Edward Jarell Conaway filed this action, *Conaway v. Warden, et al.,* ("Conaway I"), alleging that correctional and medical personnel at the Maryland Reception Diagnostic Classification Center ("MRDCC") in Baltimore, Maryland ignored his medical problems with an infected Foley catheter and his need for medical housing, and requesting unspecified damages.[2] Following supplementation (ECF No. 3), the case proceeded to service of process on the Warden and the Medical Defendants. Dispositive motions were filed

---

[1] The Clerk shall amend the docket to reflect the full spelling of Warden Tina Stump's name.

[2] Conaway provided a supplemental filing stating his claim for relief is $50 million. ECF No. 28. Although not delineated in the Complaint, the Court assumes that Conaway is suing Defendant Stump, who is a state employee, in her official and individual capacities. State officers sued in their official capacities are not "persons" subject to suit for money damages under 42 U.S.C. § 1983, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), and Maryland has not waived its sovereign immunity under the Eleventh Amendment to a suit of this kind in federal court. *See* Md. State Gov't Code Ann., §12-202(a). As a preliminary matter, the Court finds that Warden Stump is protected from suit in her official capacity under the Eleventh Amendment to the United States Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). Thus, any claim for monetary damages against Stump in her official capacity as Warden is barred by the Eleventh Amendment.

and were pending when Conaway was transferred from MRDCC on June 9, 2017. ECF Nos. 15, 18 and 21.[3] Because he failed to provide a new address, the case was dismissed without prejudice on October 11, 2017. *Id.*, ECF No. 21.

On November 27, 2017, Conaway, who had been transferred to the Western Correctional Institution in Cumberland, Maryland, initiated the same action against the Warden of MRDCC and Dr. Dolph Druckman. *See Conaway v. Warden of MRDCC, et al.*, Civil Action No. RDB-17-3535 (D. Md.) ("Conaway II"). Conaway sought money damages and alleged that medical personnel failed to properly change his Foley catheter, causing a urinary tract infection that went undiagnosed and untreated during the four months Conaway was housed at MRDCC. Taking into consideration that the Correctional and Medical Defendants had incurred the cost of litigation in preparing and filing dispositive motions in "Conaway I," the second action, "Conaway II," Civil Action No. RDB-17-3535, was dismissed, and Defendants in "Conaway I" were granted time to move for reactivation of their previously-filed dispositive Motions. ECF No. 23.

Defendants now move for reactivation of their Motions, which are construed as Motions for Summary Judgment.[4] ECF Nos. 24 and 25. Conaway filed an opposition Response, as supplemented, to Defendant Druckman's dispositive motion (ECF Nos. 29 and 30), to which Druckman has filed an opposition Reply. ECF No. 31. The case is ripe for disposition. After considering the pleadings, exhibits, and applicable law, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2016), as a hearing on the Motions is deemed unnecessary. For reasons to

---

[3] This Memorandum Opinion cites to pagination found in the Court's electronic docket.

[4] Defendants' dispositive submissions will be treated as Motions for Summary Judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

2

follow, Defendants' dispositive Motions, construed as Motions for Summary Judgment, are granted.

## Background

In his unverified May 1, 2017 Complaint, Conaway asserts that he was denied medical housing and medical care. ECF No. 1. He elaborates on these assertions in Supplemental Complaints, stating that he was denied a change of his Foley catheter and pain medication, that the medical department disclosed information about his condition to another prisoners, and that he was denied medical housing at the Maryland Transition Center ("MTC") hospital while housed nearby at MRDCC. ECF No. 3, p. 3; ECF No. 3-1, p. 1; and ECF No. 5.[5] He states that his request to see Warden Stump was ignored, and that unnamed corrections staff never "answered my remedy request slips." ECF No. 1.

### A. Defendant Stump's Response

Warden Stump submits medical records and Declarations in support of her Motion for Summary Judgment. In her Declaration, Stump avers that medical care for MRDCC prisoners is provided by a third-party contractor, not Division of Correction personnel. ECF No. 19-2, Stump Decl., ¶ 2.

Despite Conaway's allegation to the contrary, Stump's submissions demonstrate that Conaway's Administrative Remedy Procedure grievances ("ARPs") were addressed by corrections personnel. The first ARP, MRDCC-0148-17, filed on March 17, 2017, alleged a denial of medical care and medical housing, as well as the alleged disclosure by medical staff of his health condition. ECF No. 19-4, Moore Decl., pp. 3-4. The ARP was administratively

---

[5] Conaway's July 31, 2017 supplemental Complaint concerns an infraction incurred following his transfer from MRDCC to Roxbury Correctional Institution ("RCI"). ECF No. 17. As this incident does not involve the Defendants named in this case, it shall not be considered.

3

dismissed and Conaway was asked to provide additional information. *Id.,* p. 3. On April 1, 2017, Conaway submitted ARP MRDCC-0191-17 concerning his Foley catheter. *Id.,* p. 5. The ARP was administratively dismissed and Conaway again was asked to provide additional information. *Id.* On April 4, 2017, Conaway submitted ARP MRDCC-0192-17, which Stump dismissed on the merits based on the reports, assessments, and judgment of the medical contractor's staff. *Id.,* pp. 6-8; ECF No. 19-2, Stump Decl., ¶ 4. Conaway did not appeal these ARP decisions to the Inmate Grievance Office ("IGO"). ECF No. 19-5, Neverdon Decl.

### B. Defendant Druckman's Response

In response to Conaway's allegations, the Medical Defendant, Dr. Druckman, has addressed claims that medical personnel failed to house Conaway in a medical unit or prison hospital (ECF No. 1), prescribe Tylenol #3 for pain (ECF Nos. 3 and 5), permit Conaway the option of performing catheter changes on his own (ECF No. 3), and keep Conaway's medical information confidential. (ECF No. 5).

Druckman describes Conaway, who is in his early 30s, as an individual with mental health issues who since 2005 has suffered from a neurogenic bladder[6] due to a motor vehicle accident that required penile amputation. ECF No. 15-5, Druckman Aff., ¶ 4; DEC No. 15-4, Initial Intake Physical Exam, p. 1. When he arrived at MRDCC on February 23, 2017, Conaway received an admission health assessment from Nurse Practitioner Roslyn Deshields. ECF No. 15-4, p. 1. At that time, he had a suprapubic catheter in place draining clear yellow urine. *Id.* Conaway reported chronic pelvic pain for which he took oxycodone as needed, and

---

[6] Neurogenic bladder denotes a lack of bladder control due to a brain, spinal cord, or nerve condition. *See* http://emedicine.medscape.com/article/1893882-overview. (Last visited April 4, 2018).

4

demanded to see a physician for a prescription. *Id.* He was given a single dose (two tablets) of Tylenol #3, and was referred to a provider for follow up. *Id.*, pp. 1, 4.7

The following day, on February 24, 2017, Conaway was seen by Dr. Sonja Wilson at a chronic care clinic. ECF No. 15-4, pp. 5-9. His suprapubic catheter had been in place since his accident more than a decade earlier. Conaway stated the catheter usually was changed once a month, and that he currently was taking nitrofurantoin[8] for a urinary tract infection. *Id.*, p. 5. Conaway stated he had received care at University of Maryland Medical System (UMMS) and was treated by Dr. Scipio at Bon Secours Hospital for his condition, and took Tylenol #3 for pain. *Id.* Examination revealed a suprapubic opening with a catheter present but was otherwise unremarkable. *Id.* Labs were ordered, nitrofurantoin was continued, nursing daily dressings to the suprapubic catheter opening were ordered, and catheter bags were to be provided as needed. *Id.*, p. 7. The provider called Dr. Scipio to discuss Conaway's case, and was advised that the catheter should be changed every 4-6 weeks, and nitrofurantoin or Bactrim should be prescribed to decrease the chance of a urinary tract infection. *Id.* A urology consult, to include replacement of the current catheter, was ordered. *Id.*, p. 9.

On March 6, 2017, Dr. Wilson noted that Conaway's urine culture showed the presence of E. coli bacteria. *Id.*, p. 10. Ciprofloxacin, an antibiotic, was prescribed. *Id.* Dr. Wilson noted that the Regional Medical Director ("RMD") advised that the utilization management team did

---

[7] Druckman avers that Conaway, who has a medical history of drug abuse and did not display acute pain symptoms, had no need to regularly take Tylenol #3, which contains codeine, an opioid medication. ECF No. 15-5, Druckman Affd., ¶¶ 4, 6.

[8] Nitrofurantoin (also known as Furadantin, Macrobid, Macrodantin, or Nitro Macro) is an antibiotic used to treat urinary tract infections.
*See* https://www.drugs.com/nitrofurantoin.html. (Last visited April 4, 2018).

5

not approve an off-site urology visit for changing Conaway's chronic suprapubic indwelling catheter. *Id.*

On March 16, 2017, Dr. Druckman examined Conaway during a chronic care clinic for follow-up of the urinary tract infection and replacement of the indwelling catheter. *Id., p. 11.* Conaway's request for opioids for chronic hip and back pain was denied because he did not require assistance with activities of daily living ("ADL"). Conaway declined the offered NSAIDs and amitriptyline, an anti-depressant used to treat pain. *Id.*

On March 17, 2017, Conaway was seen by Annette Belin, R.N., at sick call, where he requested Tylenol #3. *Id.*, p. 12. The note reflects that he saw a physician the previous day for pain management and was in no acute distress. *Id.*

Conaway did not appear for his March 28, 2017 chronic care follow up. *Id.*, p. 13. He was seen by Registered Nurse Harlan Woodward on March 28, 2017 at sick call. *Id.*, pp. 14-15. Conaway stated his catheter had been in place for three months and needed to be replaced. After consultation with a physician, Woodward provided a temporary catheter and scheduled Conaway to visit a provider the next day to follow up. *Id.*

On April 11, 2017, Conaway was seen by Dr. Druckman. *Id.*, p. 16. Conaway refused assistance in replacing his catheter and insisted on self-catheterizing. He refused to sign a release of responsibility form and refused further contact with Druckman. *Id.* Plaintiff also insisted a size 8 catheter be used. *Id.* It was noted that rapport needed to be established regarding catheter replacement, and that if Conaway continued to refuse medical placement formal documentation would be obtained. *Id.* Follow up with a different provider in one week was ordered. *Id.*

On May 5, 2017, Registered Nurse Prince Talo provided Conaway with replacement urine bags. *Id.,* p. 17.

On May 25, 2017, Conaway complained to Dr. Sacari Thomas-Mohammed that his Foley catheter needed replacement, and stated his urine smelled foul and that he had experienced pelvic pain for two months. *Id.,* pp. 18-21. Conaway stated he used a Coloplast catheter size 10 or 12 with a large leg bag. *Id.* He denied fever or chills and was assessed as likely having a urinary tract infection. *Id.* Urine cultures and immediate therapy with nitrofurantoin were ordered, as was a suprapubic 12 French Coloplast brand catheter. Conaway was scheduled to be seen again in two days, and was provided 30 days of Tylenol #3. *Id.* Druckman avers that he never discussed Conaway's penile amputation with other prisoners, and did not require housing in a medical dorm or hospital. ECF No. 15-5, Druckman Affd., ¶¶ 5, 7.

The medical record submitted with the Druckman Motion ends at May 25, 2017. Relying on the more complete medical record submitted by Warden Stump, the Court notes that on June 5, 2017, Conaway submitted a sick call slip complaining of kidney stones and blood in his urine and pain. He requested a "real medical doctor" change his Foley catheter, and stated he needed oxycodone for pain relief. ECF No. 19-3, p. 17.

On June 5, 2017, Dr. Thomas-Mohamed examined Conaway, who asked that his Tylenol #3 prescription be increased from two to three times a day. The doctor noted that Conaway was scheduled for catheter replacement at Bon Secours Hospital, and further noted that Conaway had a urinary tract infection for both e-coli and

7

pseudomonas bacteria.[9] Augmentin and Cipro antibiotics were continued to treat the urinary tract infection. *Id.*, p. 21.

On June 28, 2017, Conaway was treated by Registered Nurse Olajide Meadows after he snapped off the port through which his catheter passed. A physician ordered Conaway be given Tylenol #3 and be presented for catheter assessment the following morning, because Conaway refused to allow the nurse to change the catheter. *Id.*, pp. 27, 29. On June 30, 2017, medical staff were called to the housing unit where Conaway had cut off the injection valve to inflate the balloon in his catheter, causing his urine leg bag to leak. *Id.*, p. 32. An intake nurse was called to replace the catheter. *Id.*

### C. Conaway's Opposition

Conaway states that when he saw Dr. Cipio at Bon Secours Hospital for catheter replacement on June 7, 2017, he was still infected with e. coli and pseudomonas bacteria. ECF No. 29, p. 1. Conaway argues he should not be housed in general population, complains that it took from March 16 to June 7, 2017, for him to receive hospital treatment, and implies he received no treatment while awaiting hospital care. *Id.*, p. 2. Conaway, who contends that his infection is ongoing since his transfer from MRDCC, complains that he has kidney stones and that his back has been injured due to sleeping on a metal bunk. *Id.*, p. 3. He also complains that his re-catheterization at Bon Secours did not cure his infection. ECF No. 30, p. 1.

### D. Defendant Druckman's Reply

Dr. Druckman reiterates the information conveyed in his dispositive Motion, and states that there was no medical need to house Conaway in an infirmary or hospital. ECF No. 31, p. 1;

---

[9] A pseudomonas infectious is caused by a very common type of bacteria that can get into the body through catheters and may be resistant to some antibiotics. *See* https://www.webmd.com/a-to-z-guides/tc/pseudomonas-infection-topic-overview#1 (last visited April 6, 2018).

8

ECF No. 15-5, Affd., ¶ 5.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Discussion

### A. Correctional Defendant Stump

Warden Stump raises an affirmative defense based on Conaway's failure to exhaust administrative remedies,[10] asserting the Complaint must be dismissed pursuant to 42 U.S.C. §1997e. Prisoners are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a), *see also Ross v. Blake*, _U.S. _, 136 S. Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). The statute provides in pertinent part that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)

This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Exhaustion is mandatory. *Ross*, 136 S.Ct. at 1857, *Jones v. Bock*, 549 U.S. 199, 219 (2007). A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856, citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"). The purpose of exhaustion is to: 1) allow a prison

---

[10] Stump also argues that she is not liable for any wrongdoing by medical personnel not subject to her supervision, and that she is entitled to qualified immunity. As she is entitled to rest on an affirmative defense, the Court will not address these additional arguments.

10

to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones,* 549 U.S. at 219. A prisoner's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones,* 549 U.S. at 211–12, 216; *Moore,* 517 F.3d at 725.

In *Ross,* 136 S. Ct. at 1859, the Supreme Court of the United States identified three kinds of circumstances in which an administrative remedy is unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing a request for administrative remedy ("ARP") with the warden of the prison is the first of three steps in the ARP process. *See* Code of Md. Regs. ("COMAR"), tit. 12 §07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 §07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 §07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office. *See* Md. Corr. Servs., Code Ann. §§10-206, 10-

210; COMAR, tit. 12 §§ 07.01.03 and 07.01.05B.

Complaints are reviewed preliminarily by the Inmate Grievance Office ("IGO)"). *See* Md. Code Ann., Corr. Servs. §10-207; COMAR, tit. 12 §07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Code Ann., Corr. Servs. §10-207(b)(1); *see* COMAR, tit. 12 §07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. Md. Code Ann., Corr. Servs. §10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Code Ann., Cts. & Jud. Proc. §10-208(c); COMAR tit. 12 §07.01.07-.08. The conduct of such hearings is governed by statute. *See* Md. Code Ann., Corr. Servs. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the prisoner's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* Md. Code Ann., Corr. Servs. §10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* Md. Code Ann., Corr. Servs. §10-210. A prisoner need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

"Exhausting administrative remedies after a complaint is filed will not prevent a case

from being dismissed for failure to exhaust administrative remedies." *Kitchen v. Ickes*, 116 F.Supp. 3d 613, 624 (D. Md. 2015), citing *Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001). Moreover, exhaustion is a precondition to filing suit in federal court. *Kitchen*, 116 F.Supp. 3d at 625, citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (prisoner may not exhaust administrative remedies during the pendency of a federal suit).

Stump documents that Conaway did not appeal the denial of his ARPs, and did not complete the administrative exhaustion process by seeking review by the Inmate Grievance Office. ECF No. 19-5, Neverdon Decl. As a result, Conaway may not proceed against Stump in this Court.

### B. Medical Defendant Druckman

Dr. Druckman argues that he did not deprive Conaway of adequate medical care. To demonstrate a denial of his Eighth Amendment right to necessary medical care, Conaway must prove two essential elements. First, he must satisfy the objective component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If he proves this first element, Conaway must then prove the second subjective component of the Eighth Amendment standard by showing that Dr. Druckman was deliberately indifferent to that serious medical condition. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware

13

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference," *id.* at 837; they are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844; *see also Johnson v. Quinones*, 145 F.3d at 167. Further, when "it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated pursuant to 42 U.S.C. § 1983." *Bennett v. Reed*, 534 F. Supp. 83, 87 (E.D.N.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982).

There is no doubt that Conaway's penile injury and loss of bladder function is serious and poses ongoing health problems. Druckman's affidavit, supported by the medical record provided by both Defendants and outlined above, contradict Conaway's allegations and demonstrate that Conaway, who often was non-compliant with regard to catheterization changes, has received appropriate health care. Conaway's medical needs have been complicated in part by his own behavior. Nonetheless, his needs have been assessed and the necessary treatment, including pain medication, outside care by a specialist, urinalysis, and antibiotics, have been provided and adjusted as needed. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970). There are no exceptional circumstances found here.

## CONCLUSION

In sum, Conaway does not establish that Defendants knew of and disregarded an excessive risk to his health or safety in violation of his rights under the Eighth Amendment. Accordingly, even when the facts are viewed in the light most favorable to Conaway, there are

no genuine issues of material fact in dispute, and Defendants are entitled to summary judgment in their favor as a matter of law. A separate Order follows.

Date: *April 11, 2018*

/s/ Richard D. Bennett
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE